BARBARA ANN BLAND, ADMINISTRATRIX OF THE ESTATE OF AUSTIN L. BLAND, DECEASED, APPELLANT, V. MARCUS D. FOX ET AL., APPELLEES.

111 N. W. 2d 537

Filed November 10, 1961.   No. 34961.

*Charles M. Bosley* and *Robert C. Bosley,* for appellant.

*Russell & Colfer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

This is a damage action for wrongful death arising as a result of a collision between a car driven by one Austin L. Bland and a semitrailer truck owned by the two defendants and driven by the defendant, Marcus D. Fox, hereinafter referred to as defendant Fox. Bland was killed instantly. Defendant Fox was injured and taken to the hospital where he made two statements to officials to which we will refer later.

The accident occurred on a paved two-lane highway some 4½ miles west of McCook.

Issues were made and trial had. At the close of evidence for the plaintiff in chief, the trial court on motion directed a verdict for the defendants. Plaintiff appealed. We reverse the judgment of the trial court and remand the cause for a new trial.

The issues of negligence upon which the case was tried involved allegations that defendant Fox failed to keep a proper lookout; failed to have his vehicle under proper control; failed to stop in time to avoid the collision; drove on to the north side of the highway im-

mediately prior to the collision; and failed upon meeting Bland to keep the vehicle to the right of the center of the highway and drove on to the north side of the highway just prior to the collision. These allegations must be read in the light of the undisputed fact that the Bland car was traveling west and the defendants' vehicle traveling east.

Before we discuss the facts, it becomes necessary to state some applicable rules of law.

Witnesses used the terms "block" and "blocks" as descriptive of distances. The rule is: "When used as a measurement of distance, and nothing appears to the contrary, the commonly accepted meaning of a block is 300 feet." Gorman v. Dalgas, 151 Neb. 1, 36 N. W. 2d 561, followed in Wolfe v. Mendel, 165 Neb. 16, 84 N. W. 2d 109. In view of the limited distances involved, we state the evidence of distance in terms of feet under the above rule.

We restate the established rule: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Wrona v. Schrawger, 171 Neb. 814, 108 N. W. 2d 95.

Section 39-748, R. R. S. 1943, provides: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the roadway as nearly as possible."

" 'A violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence per se, but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence

is established thereby.' " Carter v. Chicago, B. & Q. R. R. Co., 170 Neb. 438, 103 N. W. 2d 152.

The plaintiff contends that, under the above rule, the evidence presented a jury question.

The defendants rely in large part upon two contentions. First, that the evidence as to the accident is entirely circumstantial and under the necessary requirements of the circumstantial evidence rule is insufficient to present a jury question.

In 31 C. J. S., Evidence, § 2, p. 505, the rule is stated as follows: "Direct evidence is evidence which if believed proves the existence of the fact in issue without any inference or presumption; while circumstantial evidence * * * is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist. The distinction between these two classes of evidence is of little practical value, especially in view of the obvious necessity that all evidence be direct with respect to its own subject matter, for the law will not permit the drawing of an inference from a supposed fact of whose existence there is no direct proof."

In 20 Am. Jur., Evidence, § 4, p. 35, the rule is stated as follows: "Other terms used to designate different forms of evidence are 'direct' and 'circumstantial,' direct evidence being that which proves the fact in dispute directly, and circumstantial evidence being that which relates to a series of facts other than the fact in issue, which series of facts has been found, by reason of experience, to be so associated with the fact in issue that, in relation of cause and effect, they lead to a satisfactory conclusion."

The Supreme Court of Missouri in State v. Famber, 358 Mo. 288, 214 S. W. 2d 40, states the rule as follows: "Direct evidence is said to be 'evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the ex-

istence of a fact, gives rise to a logical inference that such fact does exist.' And it is also said that direct evidence is that coming from an 'eye witness'; or one who speaks directly 'of his own knowledge' on the main or ultimate fact to be proven; or who 'saw or heard' the factual matters concerning which he testifies."

We held in Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349, that: "Admission of defendant of facts tending to establish a criminal charge against him is generally considered direct and not circumstantial evidence." Quite properly the above rule would apply to admissions of a defendant of facts tending to establish civil liability for negligence. We so hold. The above rule applies to the evidence offered by the plaintiff as to statements made by defendant Fox while at the hospital after the accident.

It becomes apparent, as will be developed later, that a large part of the evidence offered by plaintiff was direct evidence instead of circumstantial evidence.

Defendants make another contention which requires attention. Conceding that the statements made by the defendant Fox came "from the lips of the only living eye witness" it is argued that the plaintiff is bound by that testimony and "dispels the effect of plaintiff's wholly circumstantial evidence which suggests inferences not sufficient in themselves to establish any negligence on the part of" defendant Fox.

In Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, we examined our decisions and restated this rule: "As a general rule a party calling a witness vouches for his credibility and is ordinarily bound by any evidence he gives which is not contradicted or shown to be unreliable. In other words, a party who offers the evidence of a witness cannot subsequently object that it should not have been received or that it is insufficient to sustain a judgment based thereon. But a party calling a witness is not necessarily bound by his testimony. This is true where the testimony is contradicted, either expressly or

by inference, by evidence that would justify the trier of facts in arriving at a different conclusion."

The difficulty with defendants' contention, however, is that plaintiff did not offer the defendant Fox as a witness. Fox did not testify. His credibility was not put in question as a witness. The rule above stated would prevent the plaintiff challenging the credibility of the highway patrolman and the county attorney. Plaintiff vouched for their credibility as to what Fox told them. Plaintiff did not vouch for the credibility of Fox or the truth of what he said.

In Dryer v. Malm, 163 Neb. 72, 77 N. W. 2d 804, we restated this rule: "In an action wherein there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him."

We now review the evidence of the plaintiff in the light of the above rules and state conclusions which we think a jury could reasonably have reached.

The accident happened about 8 p.m., November 14, 1959. The pavement was clear. The weather was cloudy. It was cold and a wind was blowing.

As heretofore stated, the Bland car was proceeding west, he being alone in the car. The defendants' truck was going east with the driver alone in the cab.

There was one eyewitness who testified to the movements of the Bland car up to a few moments before the impact. Bland was driving west on the north side of the highway with his lights on and at a speed of 40 or 45 miles an hour. A witness, Mr. Guzman, was proceeding west following the Bland car at a distance of about 600 feet. During the distance from McCook and before the accident, three cars from the west going east passed the Bland and Guzman cars. Guzman would lose sight of the Bland car when his courtesy dim lights were on and regain sight of the Bland car when he restored his driving lights. Guzman testified that Bland was driving on the "right-hand side." Guzman dimmed

his lights when the last car went by and when he restored them he saw a roll of smoke like steam and dust and then discovered that the accident had happened. Guzman dimmed his lights about 300 to 450 feet east of a turnoff to a farm. The cars came to rest across the road and slightly west of this turnoff. A map in evidence shows the distance to be about a road's width west of the turnoff to the farm where the cars came to rest. Guzman said that he met an eastbound car a little before he came to a sort of "S" curve in the highway. This "S" curve in the highway would turn a westbound car following the contour of the road slightly south of west. It is a matter of common knowledge that the main beam of headlights follows the direction of a car. So, at that point for two reasons Guzman could have momentarily lost sight of the Bland car.

Now then, what happened to the Bland car in the interval between the time Guzman momentarily lost sight of it and of equal importance what happened to the defendants' truck?

There is direct evidence that a car coming east passed the Bland car before the accident. That car is shown to have been on its own or south side of the highway. The distances testified to by Guzman would put the Bland car at about the point this eastbound car passed near the eastbound truck of defendants. The jury could have concluded that the Bland car was on the north or its own side of the highway at that time.

There is other direct testimony, under the above authorities, of the movements made by the Bland car and defendants' truck during the period that Guzman did not observe the Bland car. There is evidence of admissions made by defendant Fox of facts and circumstances.

Defendant Fox was injured but it does not appear that his injuries were serious. The first interview was had at the hospital with a highway patrolman some 30 to 45 minutes after Fox had left the scene of the accident. The patrolman testified from memory and related Fox's

statement as follows. Fox said he saw only one car approaching him, although at that time, there were the Bland and Guzman cars approaching him. Neither did Fox see the three cars that Guzman testified passed him (Guzman) going east. Fox told the patrolman that the car he was meeting "was in his lane and seemed to be going to make a turn into a driveway." So Fox pulled "to the left" to give the car more room "and then the car, instead of turning, swerved back over into the north lane again," and the collision occurred. Here Fox puts himself at least turning toward the north lane and puts the Bland car in "the north lane" before the collision.

The second statement of defendant Fox was made in a conversation with the county attorney and others, although testified to only by the county attorney. This conversation took place at the hospital about 2 hours after the accident.

Defendant Fox said that he observed a car coming toward him from the east and when "some distance from him, it crossed into his lane of traffic." He further said that "the left wheels of the car went onto the south shoulder of the highway." This occurred east of the driveway to the south but how far east is not shown. Fox said he "thought that the car was going to turn onto this driveway," so he turned his truck slightly to the north and then the car turned "towards the northwest" and the car and truck collided. The jury could rationally have found that this movement of the Bland car could reasonably have occurred where Bland swung into and out of the "S" curve as he approached the graveled highway. Fox, in this interview, said, "he did not, *to his knowledge,* cross the centerline of the highway into the northbound lane until after the two vehicles came in contact."

The Bland car came to rest headed north, slightly west, with its rear over 7 feet off the pavement.

The Fox tractor was off the pavement headed northeast with the trailer on the pavement headed northeast.

The right rear wheels of the trailer were across the centerline of the pavement.

There were skid marks for a short distance behind the trailer made by the Fox vehicle although their length and what wheels made them does not appear. They are mostly north of the centerline of the highway.

The pictures taken of the wreckage indicate that the Bland car was struck on the left side and was literally smashed. They also indicate that the main blow to the tractor was on its left front fender, wheel, and mechanism in that area.

What evidence there is of debris on the highway shows it all to be north of the centerline of the highway. There is no evidence of gouging of the pavement or shoulder by movement of either of the two vehicles. Neither is there evidence of either driver slackening speed or using brakes save that indicated by the sketchy evidence as to the skid marks.

Such is the evidence which the trial court held insufficient to submit the issue of negligence to the jury.

Under section 39-748, R. R. S. 1943, and the authorities heretofore cited, and without examining into the other allegations of negligence, we conclude that there is sufficient evidence to take the issue of negligence in driving on the wrong side of the highway to the jury.

There is one further matter to be determined. Plaintiff offered in evidence the testimony of an expert witness and undertook to have him testify, as stated in her brief, "for the purpose of interpreting the effects of the forces and stresses to the metals of the vehicles by the impact, to determine from photographs admitted in evidence, the witness' personal examination of the vehicles after the collision, his examination of the highway at the scene, and the location where the vehicles came to rest, for the purpose of determining, if possbile from this testimony, the location on the highway of the vehicles at the point of impact, the manner of their com-

ing together, and the distance and route they traveled after impact."

The trial court excluded the proposed evidence. Plaintiff made no offer of proof. Error is assigned here. The rule is: "When on direct examination an objection to a question is interposed by the adverse party and sustained, there must be an offer of proof of the facts sought to be put in evidence by the question in order to present the ruling to this court for review." Parker v. State, 164 Neb. 614, 83 N. W. 2d 347.

The matter of error assigned is accordingly not here for review.

The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.