DALE BROKAW, APPELLEE AND CROSS-APPELLANT, V. EDWIN
ROBINSON, APPELLANT AND CROSS-APPELLEE.

164 N.W. 2d 461

Filed January 24, 1969. No. 36902.

Story, Carl & Parker, for appellant.

Jewell & Otte, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,
SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a workmen's compensation case based upon a
cerebral vascular accident, commonly known as a
stroke. The plaintiff recovered an award before the
single judge Workmen's Compensation Court; which was
affirmed, with minor modifications by the Workmen's
Compensation Court en banc; and later affirmed on ap-
peal to the district court.

The plaintiff, Dale Brokaw, was 44 years old and was
employed by the defendant to drive a truck hauling
cattle and feed and also to do farm work. For several
months prior to April 21, 1966, plaintiff had been work-
ing from 7 a.m. to about 9 or 10 p.m., in driving a truck
and hauling feed and cattle. On April 21, 1966, he ar-
rived at the defendant's farm for work at about 7 a.m.
He drove to Foster, Nebraska, where he picked up Ray
Krueger, a farmer, and went to a farm near Ewing

where they picked up two bulls whch Krueger had purchased. They then returned to Foster, weighed the bulls, and attached a portable cattle chute to the truck. The plaintiff went ahead to the Krueger farm alone, while Krueger remained in Foster for 15 or 20 minutes. When the plaintiff arrived at the Krueger farm, the farmyard was muddy and there was a mudhole about 20 to 30 feet across. The gate of the pen where the bulls were to be placed was some 40 to 50 feet from the place where the truck was parked. The mudhole was between the gate and the truck. To unload, it was necessary to unhook the portable cattle chute from the truck and pull it through the mudhole to the gate, and then back the truck to the chute. The portable chute had a steel tongue and frame with wooden sides and a plank floor. It was mounted on two rubber-tired wheels. It weighed 400 to 500 pounds. The plaintiff unhooked the chute from the truck and by pulling and jerking on the tongue had gotten it some 30 to 35 feet from the truck and 15 or 20 feet from the gate and in the mudhole, and couldn't get it any farther alone. At this time Mr. Krueger arrived from town and found the plaintiff leaning against the chute. The plaintiff was sweating, although it was a fairly cool day, and he seemed slower and not as lively to Mr. Krueger. The plaintiff told Krueger he couldn't stand much more of that, and that the chute pulled ten times as hard in the mud. Krueger and the plaintiff together got the chute to the gate and the plaintiff backed the truck to it and they unloaded the bulls.

The plaintiff testified that the time of Krueger's arrival was the first time that he felt dizzy or his right arm and leg felt numb. Krueger testified that when the plaintiff left the farm he said he was in a hurry, but he walked slowly. The plaintiff went to the defendant's home from the Krueger farm and after his noon meal, drove his truck to Sioux City, Iowa, for a load of feed to be delivered in Plainview, Nebraska. He didn't help load the feed. On the trip to Plainview, a rim on a wheel

broke. Plaintiff and the defendant, who had come along, and two men from a garage changed it. The plaintiff then drove the truck to Plainview, but the store was closed and he did not unload the feed. Defendant testified that on the trip from Plainview to the defendant's farm, the plaintiff told him that plaintiff's arm was "kind of going to sleep." The plaintiff went home from the defendant's farm, arriving about 9 p.m., and although his meal was ready, he didn't eat, but went directly to bed.

When the plaintiff awoke on April 22nd, he could not stand up nor talk very well. He was taken to the hospital and his condition diagnosed as a cerebral vascular accident with paralysis of the right arm and leg and facial paralysis.

Plaintiff had been in good health prior to April 21, 1966. None of the doctors could find any pathological or organic causes, such as constitutional weaknesses or known circulatory conditions.

Doctors Kopp and Schabauer attended the plaintiff at the time of his stroke and thereafter. Originally they obtained their history largely from the plaintiff's wife and father because of the plaintiff's inability to speak. His mental capacities were also impaired. Some months later, they received the more specific history previously outlined. Dr. Neis, a thoracic and cardiovascular surgeon examined the plaintiff some 2 months after his stroke. He had no information as to the plaintiff's exertions on the job except that he was driving a truck. All of the doctors agreed on the diagnosis as a cerebral vascular injury or accident. Dr. Neis' report said that he could find no cause, but wondered if he might have thrown an embolis. Dr. Kopp found no evidence of an embolism. He testified that, in his opinion, over-exertion of the kind previously described must be a contributing cause of the plaintiff's cerebral vascular accident. Dr. Schabauer testified that over-exertion may be a contributing cause, or stress can be a contributing or triggering factor to a stroke. He also testified that the

moving of the chute on muddy ground may have been a contributing or triggering factor, and that the physical activities over the weeks preceding the actual stroke can be considered an undue stress to the system and, therefore, can be considered with reasonable certainty as a contributing factor.

The defendant contends that mere exertion ordinarily incident to the employment cannot constitute an accidental injury and that exertion combined with a pre-existing disease or condition does not constitute a compensable injury. We cannot agree.

Section 48-151 (2), R. R. S. 1943, was amended in 1963. The word "injury" was substituted for the word "event" in the definition of "accident" in the Workmen's Compensation Act, and specific and significant language with respect to causation was added. That section now reads: "The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment."

The change in the workmen's compensation statute clearly removes the necessity of finding a single traumatic event as the cause of an injury. The "by accident" requirement of the Workmen's Compensation Act is now satisfied, either if the cause was of an accidental character, or if the effect was unexpected or unforeseen, and happened suddenly and violently. The problem in cases such as this is now causation, and whether an accidental injury arose out of and in the course of the employment. The statutory change has removed Ne-

braska from the minority of states which require a showing that the employment exertion which produced the result was in some way unusual in order to establish its accidental character. See, 1A Larson, The Law of Workmen's Compensation, §§ 38.00 to 38.61, pp. 519 et seq.; 5 Schneider, Workmen's Compensation Text (Perm. Ed.), § 1387, p. 117.

"An overwhelming majority of jurisdictions also find adequate accidental quality in the element of 'breakage' present in such injuries as cerebral hemorrhage, ruptured aneurysm, ruptured aorta, broken blood vessel, apoplexy, aortic regurgitation, hemorrhage in eye, and pulmonary hemorrhage." 1A Larson, The Law of Workmen's Compensation, § 38.20, p. 530. The statutory change has removed Nebraska from the minority position here also.

In a workmen's compensation case such as this, the plaintiff now has the burden of establishng by a preponderance of the evidence that exertion in his employment, in reasonable probability, contributed in some material and substantial degree to cause the injury. Obviously, the presence of a preexisting disease or condition would enhance the degree of proof required to establish that an injury arose out of and in the course of employment. In this case, there was no evidence that the plaintiff had any preexisting disease or condition which was material to a cerebral vascular injury or accident.

In Schwabauer v. State, 147 Neb. 620, 24 N. W. 2d 431, we said: "If a claimant has adduced competent evidence having probative value which preponderantly convinces the trier or triers of the fact that claimant had an accident and incurred a disability arising out of and in the course of his employment, notwithstanding the trier or triers of the fact may recognize a possibility or even a probability that this was not true, an award of compensation thereon is proper and on appeal therefrom must be sustained."

In Welke v. City of Ainsworth, 179 Neb. 496, 138 N.

W. 2d 808, we reiterated the language of the Schwabauer case and said also: "In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that exact a science. * * * To require a greater degree of proof in a workmen's compensation case than we would require in a tort action is, to say the least, thwarting the basic purpose of the workmen's compensation statute."

The evidence here preponderantly established that the cerebral vascular injury was unexpected or unforeseen, happened suddenly and violently, and produced at the time objective symptoms of an injury. We think the evidence also established that the plaintiff's injury, in reasonable probability, arose out of and in the course of his employment.

The one judge Workmen's Compensation Court, the Workmen's Compensation Court en banc, and the district court all found that the plaintiff was entitled to workmen's compensation benefits, and these findings were correct.

The plaintiff has cross-appealed on the ground that the district court failed to allow the plaintiff a reasonable attorney's fee in the district court.

Section 48-125, R. R. S. 1943, provides in part: "In the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court."

The district court should have allowed a reasonable attorney's fee to be taxed as costs. Plaintiff is also entitled to an attorney's fee in this court. Plaintiff is, there-

fore, allowed a total attorney's fee of $1,250 for services in the district court and in this court.

Except as to costs, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C. J., dissenting.

The plaintiff's treatment doctor in this case testified as follows: "Q. Doctor, to get right down to it, you can't say why or how this man happened to have this stroke? * * * A. Medically speaking, pathologically speaking, no; I can't, probably God only knows why he did. * * * Q. Do you remember being asked this question in your deposition, 'Question, Whether the long hours or the moving of the chute or a combination of both, were a precipitating cause? Answer, I don't say that those conditions were directly a precipitating cause.' * * * Q. Do you remember those questions and those answers? A. Uh-huh." Lest these questions and answers be challenged as being out of context, I submit that the record fairly reflects a repetitious reiteration that this plaintiff's activities on his job *could* have been a precipitating or a contributing factor to the occurrence of the stroke.

In the majority opinion, much is made of the extremely heavy labor indulged in handling the chute. The treatment doctor testified as follows: "Q. Would you not have to know how much the chute weighed and how he pushed it and how much force was exerted? A. No. Q. And what type of man he was, whether he was strong or weak, my size or your size, how big he was? A. No. Q. Those things are not important? A. No, they are not important. We in the medical field are a little bit different than in a legal matter." As I interpret the record in this case it leads me to the following conclusions or observations: (1) The prevailing state of medical uncertainty as to the connection between antecedent effort with the cause of stroke, (2) that here the antecedent effort or strain merely could have been a precipitating

or contributing factor, (3) that the comparative long intervening period of time between the strain or effort and the occurrence of a stroke while the plaintiff was sleeping distinguishes this case from other types of cases where recovery has been allowed, and (4) the first appearance of a reconstructed history connecting the man's employment with this stroke appeared for the first time several months after the occurrence of the stroke and after the doctors had been treating the plaintiff for a considerable period of time. This is explained upon the theory that the plaintiff was incompetent to speak during this period of time. It leaves this area nebulous from the standpoint of proof, to say the least.

We should remember that our examination of this record here is de novo and we are required as fact finders to find affirmatively that this stroke was proximately caused, with reasonable medical certainty, from an accident arising out of the plaintiff's employment. Although the plaintiff's treatment doctors at different times in their examinations gave lip service to the ritual questions establishing the element of reasonable medical certainty, I submit that their testimony falls far short of any reasonable conclusion that the plaintiff has met the burden of proof required under our law. If we were reviewing this case simply to determine the sufficiency of the evidence to support the jury verdict, the question would be entirely different, and even on that basis, I believe there wolud be a grave question as to the sufficiency of this record.

I submit that the 1963 amendment to our Workmen's Compensation Act did not change, nor was it intended to change, the basic rules with respect to the burden of proof and the fact that the accident had to arise out of and in the course of employment to be compensable. The only substantive change made in the previous Workmen's Compensation Act by the 1963 amendment was to eliminate our previous and rather transitory judicial interpretation that "unexpected or unforeseen event" meant

only "an external" event. It was meant solely to delete the previous requirement that a claimant show injury from an external event such as a slip, trip, fall, or unusual exertion. The objective of the amendment to the statute was to eliminate these rather fortuitous requirements and to focus the primary attention in exertion and strain cases on factual matters of employment and medical causation. The intent to reinforce the requirements of proof is demonstrated in the following new language in the 1963 amendment: "There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury, that the injury was in fact caused by the employment." I submit that the injury to a plaintiff at the time and place sustained by such employee must be traceable to some employment circumstances, and second, that such circumstances must have happened suddenly and violently and produced *at the time* objective symptoms of an injury.

The statute as amended in 1963 provides: "The word accident * * * shall, * * * be construed to mean an unexpected or unforeseen injury happening *suddenly* and violently, with or without human fault, and producing *at the time* objective symptoms of an injury. The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment." It is significant that the 1963 Legislature, in enacting this amended statute, felt that the statutory requirement of suddenness must be preserved. Legislative Bill 498, introduced in the 1963 Nebraska Legislative Session, would have deleted the requirement of "suddenness" but was unanimously killed by the Judiciary Committee, to which both bills were referred, and the amended statute as set out above was ultimately reported out without a deletion of this language.

In my opinion the evidence in this case falls far short of meeting the requirement of being employment-caused or happening suddenly and violently and producing at the time objective symptoms of an injury. This case demonstrates the helplessness of an employer to be able to check and ascertain the facts surrounding the requirement of "producing at the time objective symptoms of an injury." The chute incident and the strain allegedly surrounding it were reconstructed almost 6 months after the time of the alleged "sudden happening."

I do not believe that the 1963 amendment to the Workmen's Compensation Act was intended, either expressly or covertly, to permit an enlargement of compensation liability into the area of health coverage during the time period of employment. In fact, a close reading of the statute and the history reveals that it was intended to reenforce the previous judicially announced requirements of proof in workmen's compensation cases where there was no observable or objectively identified accident external to the surface of the body.

Manual effort and lifting strain, of course, are inherent in the ordinary course of employment, as of course is clearly demonstrated in the type of employment present in this case. The door is now thrown open to the establishment of a hindsight connection between some effort on the job and a contemporaneously suffered stroke by the employee. The connection was sustained by medical testimony that this could have been a contributing or could have been a precipitating factor. I submit that this not only fails to meet the factual requirements of proof set out in our statute and in our judicial decisions but is contrary to the purposes and objectives of the Workmen's Compensation Act and the amendment in 1963 to the statute. It effectively prevents an employer or his insurer from being able to factually check or investigate the claimed accident occurring suddenly and violently and producing objective symptoms at the time of the injury. It is common knowledge that there is a

much greater incidence of stroke in men in their 50's and 60's. The query arises as to whether the holding of this court today allowing liability for a stroke under these circumstances would prevent employers from assuming the risk of employing otherwise competent men because of the tremendously enlarged liability for death and total disability arising from this type of "accident." Nor do I believe that the trial or decision in a compensation case should be converted into "medical speculation as to judicial credulity or judicial speculation as to medical credibility." The decision in the Workmen's Compensation Court was divided. I can come to no other conclusion but that this case has failed on factual proof under the most liberal interpretation that can be permitted of the Workmen's Compensation Act as amended in 1963.