TERRELL R. WIEKHORST, APPELLEE AND CROSS-APPELLANT, V.
RURAL ELECTRIC COMPANY, INC., A CORPORATION,
APPELLANT AND CROSS-APPELLEE.

183 N. W. 2d 747

Filed February 11, 1971. No. 37756.

Martin, Mattoon & Matzke, for appellant.

Van Steenberg, Winner & Brower, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

The plaintiff, Terrell R. Wiekhorst, was employed by the defendant, Rural Electric Company, Inc., as a lineman. On June 17, 1967, while repairing a power line, the plaintiff's right hand and right leg were severely burned when his right hand came in contact with a 7,200 volt line.

The plaintiff was about 12 feet above the ground when the accident happened. He fell to the ground with his belt around the pole. When he regained consciousness his right climbing spur or "hook" was still in the pole and he "couldn't get it loose." As a result of the

injury it was necessary to amputate the plaintiff's right hand.

The sole issue presented by the appeal is a question of fact. The issue is whether the plaintiff sustained a 2-member disability as a result of the accident on June 17, 1967. The compensation court and the district court both found that the plaintiff had sustained a 100 percent loss of use of his right hand and a 2 percent permanent partial disability of his right leg; and that the plaintiff was entitled to compensation under subdivision (1) of section 48-121, R. S. Supp., 1965, for a permanent partial disability of 51 percent. See Paulsen v. City of Lincoln, 156 Neb. 702, 57 N. W. 2d 666, 156 Neb. 872, 58 N. W. 2d 336.

The injury to the plaintiff's right leg consisted of three burned areas on the inner aspect of the leg between the knee and the ankle, and two burned areas on his foot near the arch. These were deep burns, particularly those on the leg, extending into the subcutaneous tissues and possibly the muscles. There is also a calcification over the inner aspect of the plaintiff's right knee. The plaintiff testified that his leg becomes tired and very sore at the knee joint on the inside under the large scar near the joint. The more he uses his leg, the more it bothers him. The burned areas also get dry, peel, and flake off.

There is substantial conflict in the medical testimony in this case concerning the disability to the leg. The four medical witnesses who testified for the plaintiff estimated his disability to be from 2 percent to 15 percent of the right leg. The defendant's medical witnesses found no compensable disability.

Dr. Dorwart estimated the plaintiff's disability at 15 percent. He based his opinion on the deep scarring of the leg, the weakening of the muscles, and the calcification resulting from a sprain of the medial ligament of the knee.

Dr. Maruyama thought there was a torn cartilage in the knee joint that should be repaired surgically. If

that operation were successful, he thought the permanent disability would be 5 percent. He had previously estimated the disability at 2 percent based upon the scarring near the knee joint.

Dr. Claussen estimated the disability at 15 percent of the knee. His opinion was based on the scarring and the calcification at the inner aspect of the knee.

Dr. Ries estimated the disability at 5 percent of the leg. His opinion was based on moderate laxity of the medial collateral ligament of the right knee with calcification at the origin of the inner ligament of the knee joint and some atrophy of the leg.

Dr. Preston was the treating physician and had performed the amputation of the plaintiff's hand. He testified that the plaintiff "carries no significant measurable objective functional loss in his right knee." He further stated that he could not think of anything that the plaintiff "would wish to do or would try to do, that he could not do, by reason of that leg, and it is on this basis that I do not feel that he carries any functional disability of significance in that leg." Dr. Preston thought it was "unlikely" that the calcification in the knee was a result of the accident, and that the plaintiff could still use his leg to climb poles if the scarred areas were properly padded. His testimony is subject to the interpretation that a disability exists, but that he believes it is not of industrial significance.

Dr. Webster testified that he could not find anything that "constituted an actual disability of function of the extremity" from the accident. Dr. Webster thought the calcification near the knee joint was of little significance and he found no atrophy.

Although the medical witnesses differ as to the exact cause of the disability, the preponderance of the evidence shows that the plaintiff has some permanent disability to his right leg as a result of the accident on June 17, 1967. As we view the record, it sustains the finding of the compensation court and the district court

that the plaintiff has a 2 percent permanent partial loss of use of his right leg.

By cross-appeal, the plaintiff contends that the district court should have allowed an attorney's fee to the plaintiff because the defendant failed to obtain any reduction in the amount of the award by the appeal to the district court. Since 1935, the statute has provided that where the employer appeals to the district court from the award of the compensation court and fails to obtain any reduction in the amount of the award, the district court "may" allow the employee a reasonable attorney's fee. § 48-125, R. R. S. 1943. This has been generally construed to mean that the district court should allow an attorney's fee where the employer appeals but fails to obtain a reduction in the amount of the award. See Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461.

The record in this case does not show that the plaintiff's right to an attorney's fee has been previously determined by the district court. While we are of the opinion that the trial court should allow the plaintiff a reasonable amount for the services of his attorney in that court, it is unnecessary to modify the judgment for that purpose. An attorney's fee is to be taxed as costs and may be allowed upon motion at a subsequent term. See Solomon v. A. W. Farney, Inc., 136 Neb. 338, 286 N. W. 254.

The plaintiff is allowed the sum of $750 for the services of his attorney in this court.

The judgment of the district court is affirmed.

AFFIRMED.