528

ELAGENE WHITE, APPELLANT, V.
FATHER FLANAGAN'S BOYS' HOME, APPELLEE.

300 N.W.2d 15

Filed December 19, 1980.  No. 43050.

Benjamin M. Wall of Wall, Wintroub & Weiner for appellant.

Michael P. Cavel of Emil F. Sodoro, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

BRODKEY, J.

The plaintiff below, Elagene White (Elagene), appeals from an order entered on rehearing by the Nebraska Workmen's Compensation Court, dismissing her petition against the defendant and appellee herein,

Father Flanagan's Boys' Home. The plaintiff sought benefits allegedly due her under the Nebraska workmen's compensation law for an injury which she alleged occurred on or about March 10, 1978. It appears from the record that the plaintiff was employed by Father Flanagan's Boys' Home at Boys Town, Nebraska, but on the date in question she was employed at the downtown branch office in Omaha in the mail department, where she performed a variety of tasks, including the checking of addresses, the operating of the envelope machine, and the sorting of mail. It appears from the record that, on the date above-mentioned, she developed heart palpitations or atrial tachycardia, which is a rapid beating of the heart. She was taken to a hospital and underwent electrical shock treatment to restore the normal rhythm of her heart.

On March 23, 1979, Elagene filed a petition in the Nebraska Workmen's Compensation Court alleging that her heart palpitations, distress diarrhea, gastritis, and nervous tension were due to work-related stress. In particular, Elagene contends that the stress she experienced while at work was due to the harassment she received from one of her supervisors. On May 22, 1979, a hearing was held before Judge James P. Monen of the Workmen's Compensation Court. Based upon the testimony and medical evidence presented, the court determined that the plaintiff had not met her burden of proof, and had failed to show that her employment created a greater strain than nonemployment life. On June 25, 1979, the court ordered that the plaintiff's petition be dismissed.

Elagene then petitioned for a rehearing before a three-judge panel; and on November 2, 1979, the court affirmed the original order of dismissal entered by Judge Monen, finding in its order of dismissal that the plaintiff had failed to offer or adduce any evidence to show how the strain of her employment compared to that of her nonemployment life. The court stated in its order: "An award of workmen's compensa-

tion benefits may not be based on possibility or speculation and the claimant, unaided by presumption bears the burden of proof; this applies to the evidence necessary to show that the employment contribution involved a strain greater than non-employment life; this evidence is not present in this case; therefore, the plaintiff has failed to sustain her burden of proof and her petition should be dismissed."

The plaintiff then perfected her appeal to this court; and in her brief on appeal, assigns as error that the Workmen's Compensation Court ignored the evidence in the record that plaintiff's working conditions not only produced a greater amount of stress than her non-employment environment, but also produced greater stress than in other places of work maintained by the same employer. She also assigned as error that the Workmen's Compensation Court was mistaken in requiring the plaintiff to prove that her employment stress was greater than her nonemployment stress, in view of the fact that there was medical testimony to the effect that the cause of her atrial tachycardia was the stress of her employment.

The record in this case indicates that the plaintiff is a woman, now 59 years of age, with an extensive history of heart disability. The plaintiff testified that she had rheumatic fever as a teenager, and that she was hospitalized for congestive heart failure in 1964, in 1966, and on two occasions in 1971. In addition, the plaintiff has had mitral heart disease and underwent open heart surgery to have a prosthetic mitral valve implanted on January 18, 1972.

After her recovery from the 1972 surgery, Elagene was advised that she could engage in nonstrenuous employment, and in 1974, she started work for the defendant, Father Flanagan's Boys' Home, as a clerical worker in the mail department. The record indicates that, in the course of her employment, Elagene was assigned to work under various supervisors within the different divisions of the mailing department.

She testified that the stress she had experienced at work began in 1976, when she was assigned to work under Sharon Hault, a supervisor in the Boys Town mailing department. In her testimony, Elagene contended that Sharon Hault acted in a hostile manner toward her for a period in excess of 2 years, belittling her work, calling her derogatory names, refusing her privileges granted to other employees, separating her work out for special attention, and criticizing her in a loud voice in front of other employees.

It further appears from the record that Elagene was hospitalized twice in 1976, the first time in August of that year when she was admitted to the hospital because of acute gastritis. She was subsequently discharged and her treating physician recommended to defendant's personnel manager that Elagene be assigned to a different supervisor. This request was complied with, but it appears that Elagene was subsequently reassigned to work under Sharon Hault, following personnel changes made at Boys Town. Thereafter, in December of 1976, Elagene suffered a stroke which resulted in the permanent loss of sight in her right eye. She testified at the hearing before the Workmen's Compensation Court that she had been running up a stairway from the first floor to her fourth floor place of work when the stroke occurred, adding that the elevator had been full and she wanted to return to work in time after lunch to avoid a confrontation with Sharon Hault.

Elagene subsequently returned to work after suffering the stroke resulting in the loss of the sight of her eye, but was again transferred to work under Sharon Hault. On March 10, 1978, Elagene requested a transfer to another supervisor. According to Elagene, Sharon continued to harass her at work and Elagene therefore requested a transfer to another supervisor on another floor, which would have necessitated carrying certain phone books, from which she was checking names and addresses, out of their regular location.

Her request to do so was denied, and at that time, according to the evidence in the record, her heart palpitations began. She then took a bus to her physician's office where she complained of the palpitations and chest pains. Her doctor examined her, gave her some medication, and sent her home. However, the palpitations about which she complained continued; and on March 12, 1978, she was admitted to Bishop Clarkson Hospital, where she received treatment for her atrial tachycardia. Subsequently, Elagene's employment with Father Flanagan's Boys' Home was suspended for 7 days, commencing July 28, 1978, and she was thereafter terminated as an employee of the defendant, effective July 28, 1978, by letter directed to her and dated August 3, 1978.

The scope of review in this court on appeals from the Workmen's Compensation Court is set out in Neb. Rev. Stat. § 48-185 (Reissue 1978), which provides, among other things, that the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. That statute has been frequently interpreted since its enactment in 1975, and it is well-established law in this state that the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing will not be set aside on appeal unless clearly wrong; and that in testing the sufficiency of evidence to support findings of fact made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor, and he should have the benefit of every inference that can reasonably be drawn therefrom. *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980); *Keith v. School Dist. No. 1*, 205 Neb. 631, 289 N.W.2d 196 (1980); *Alcaraz v. Wilson & Co., Inc.*, ante p. 256, 298 N.W.2d 160 (1980). We must, therefore, determine whether the Workmen's Compensation Court was "clearly wrong" in dismissing Elagene's petition.

In its order of dismissal, the Workmen's Compensation Court relied upon our previous decision in the case of *Beck v. State*, 184 Neb. 477, 168 N.W.2d 532 (1969). In *Beck*, this court had before it a claim made by the widow of a state official who claimed that the emotional strain of her husband's employment, combined with chronic coronary artery disease, caused his death. In reversing the order of the District Court for Lancaster County granting workmen's compensation benefits to the widow, this court held that, if there is some personal causal contribution in the form of a previously weakened or diseased heart, a heart attack would be compensable only if the employment contribution takes the form of an exertion greater than that of nonemployment life. In its opinion, this court stated: "In a workmen's compensation case death caused by (1) heart disease that was a personal risk and (2) emotional strain that was an employment risk is not compensable in these circumstances: The strain was no greater than that of nonemployment life. See Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461.

"'. . . when the employee contributes some personal element of risk — e.g., . . . a personal disease which figures causally in his injury — the employment must contribute something substantial to increase the risk. The reason is that the employment risk must offset the causal contribution of the personal risk. . . . If there is some personal causal contribution *in the form of a previously weakened or diseased heart*, a heart attack would be compensable only if the employment contribution takes the form of an exertion greater than that of non-employment life. Note that the comparison is not with *this employee's* usual exertion *in his employment*, but rather with the exertions present in the normal *non-employment* life of this or any other person.' Arthur Larson, 'The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution,' 65 Mich. L. Rev. 441 at 469." *Beck* at 479-80, 168 N.W.2d at 533-34 (emphasis in *Beck*). We have recently

cited the above rule with approval in *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980). In this connection, see, also, *Conn v. ITL, Inc.*, 187 Neb. 112, 187 N.W.2d 641 (1971). We have also held that the question to be determined is whether the injury was the result of a personal rather than an employment risk. *Hyatt v. Kay Windsor, Inc.*, 198 Neb. 580, 254 N.W.2d 92 (1977). In *Brokaw v. Robinson*, 183 Neb. 760, 164 N.W.2d 461 (1969), we also held that the presence of a preexisting disease or condition enhances the degree of proof required to establish that the injury arose out of the employment.

In the present case, the Workmen's Compensation Court on rehearing affirmed the dismissal of plaintiff's petition because she had failed to introduce proof that the emotional stress that she experienced on her job was greater than that of nonemployment life. The court found that there was no evidence "to show any comparison either with the nonemployment life of this plaintiff or any other person, or the average employee's nonemployment life." We, also, have checked the record, and find no evidence on that issue. Such comparison and determination was a factual matter. The three-judge panel was not "clearly wrong" in its determination of lack of evidence, and its judgment must be affirmed.

No other errors appearing, the judgment of the Nebraska Workmen's Compensation Court must be affirmed.

AFFIRMED.