# Richmond.

## The Fleischmann Company and Employers' Liability Insurance Corporation, Ltd. v. Dora Swain Marshall.

### January 19, 1928.

### Absent, Burks, J.

1. Workmen's Compensation Act—*Course of Employment—Sales Agent Driving Home in Employer's Automobile which under his Contract of Employment he was Required to Keep in his own Garage on his own Premises.*—The instant case was an appeal from an award to the widow of an employee under the workmen's compensation act. The employee was a sales agent having the general supervision of the business of his employer in certain territory. He was at the call of his employer day and night. The employer furnished him a car which he was required to keep in his own garage on his own premises, and for this the employer paid him rent. The employee was killed in an automobile accident when returning home in the evening in the car.

   *Held:* That as employee was taking the car home for the night as it was his duty to do, the accident arose out of and in the course of his employment.

2. Workmen's Compensation Act—*Course of Employment—Sales Agent Driving Home in Employer's Automobile which under his Contract of Employment he was Required to Keep in his own Garage on his own Premises.*—It was the duty of an employee to take a car furnished by his employer to him, to a garage on his own premises for the night. While returning to his home one evening with the car, the employee was killed in a collision with another car. Defendant claimed that the employee intended to use the car to take his wife to the theatre. But even if the employee intended to use the car for this purpose, the appropriation of the car for his own private ends would not have begun until the employee actually started for the theatre; so long as he was proceeding to his home with the car he was performing a service for his employer in the regular course of his employment.

Appeal from an award of the Industrial Commission of Virginia.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson* and *J. H. Rives, Jr.,* for the appellants.

*Julien Gunn,* for the appellee.

CHICHESTER, J., delivered the opinion of the court.

This is an appeal from the Industrial Commission of Virginia seeking to have an award of $12.00 per week for three hundred weeks to Dora Swain Marshall, claimant, and widow of Webster H. Marshall, reviewed and reversed.

This award was based upon the findings of fact, by the Commission, in a hearing held before the full Commission in Richmond on April 9, 1927. From these findings of fact the following appears: Webster H. Marshall was employed as a sales agent for The Fleischmann Company in its Richmond territory, which takes in Petersburg, Hopewell, Ashland, Seven Pines and other towns near Richmond.

Marshall's duties consisted of a general supervision of the business of his employer in this territory, and among other things it was his duty to see that customers of the company received prompt attention whenever they made calls upon the company for service. To this end his duties frequently called him from his home at night, as it was the practice of the company to deliver yeast to customers at any hour they desired, and Marshall himself had frequent calls for such deliveries at various hours during the night, ranging from 7 P. M. to 2 A. M.

He was furnished a car by his employer, which paid for the upkeep of the car, and it was a part of Marshall's contract of employment that he keep the car at his home in a garage on his own premises, for which the company paid him rent.

, On the evening of December 15, 1926, he was in the automobile above referred to, and while proceeding along the Broad Street road close to the Belt Line Bridge and east of that bridge, he ran into another car or was run into by the other car and was killed. The accident occurred between six-thirty and six-forty-five o'clock. The residence of Marshall is on August avenue, Sauer's Gardens, in the city of Richmond, and the testimony clearly indicates that the deceased was in all probability on his way to his home at the time he met with the accident. It appears also that he was in the habit, after leaving his office, to sometimes proceed by the Universal Motor Company to get repairs, which might be necessary, made to the car, and from there go out Broad street, and down Broad Street road to Sauer's Gardens and turn in there, his home being two or three blocks off the Broad Street road. It also appears that about three P. M. on that day, Mr. Marshall had called his wife on telephone and had spoken to her about going to the theatre, and that they had made an arrangement to go to the Lyric Theatre, which they visited rather frequently, generally going to the performance beginning a quarter to eight. At about five-thirty, he again called his wife as was his custom, to find out if there was anything she wanted him to bring home, and informed her that he would be there in a short while.

The secretary and manager of the Universal Motor Company testifies that the deceased, on the afternoon of the accident, came into his office on west Broad

street and was there until about six-thirty.  He states that while he does not know what his particular object on the afternoon was, it was his custom to come in there to pay his bills frequently, but that on this particular day he knows that he did not pay a bill because the bookkeeper had gone.  He had some conversation with him, partly of a personal nature and partly of a business character.  The bills which he was in the habit of stopping by to pay were the company's bills.

The findings of fact contain this very pertinent testimony, with reference to the nature of Marshall's employment, of one J. A. Vaughan, who is a traveling solicitor for The Fleischmann Company:  "Q. Did Mr. Marshall have any regular hours in the course of his employment?  Was he subject to the call of customers of the Fleischmann Company at all hours of the day and night?  A. I would say we are something like doctors—subject to calls any hour of the day or night if a customer wants yeast.  Q. Do you know whether Mr. Marshall was subject to the call of the Fleischmann Company at night when at home?  A. Yes, sir; all of us are."  Again this appears:  "Q. I believe you stated that, as a doctor, Mr. Marshall and you were never off duty?  A. I don't consider I am ever off. They have called me at two o'clock in the morning at Reugers Hotel and I would have to take out one pound of yeast."

The theatre tickets above referred to were introduced as evidence by the insurance carrier and there was evidence that they had been purchased between 5:30 and 6 o'clock.

[1] Under the circumstances above narrated the finding of the Commission was that Marshall met his death by accident arising out of and in the course of his employment.  In this we think the Commission was

clearly right, and the finding supported by ample evidence.

The Fleischmann Company and the insurance carrier assign as error that having found as a fact that the deceased employee's duties required him to be subject to the call of the employer's customers at all hours of the day at his office and at his home at night for the purpose of delivering yeast, the Industrial Commission erred in concluding as a matter of law that at the time of the accident the deceased was acting in the scope of his employment, and that the accident arose out of his employment and in the course of his employment, as the facts found by the Commission clearly show he was performing no service for his employer.

[2] There is no merit in this assignment. The obvious answer thereto is it was the deceased's duty to take the automobile furnished him by the company to his home at night. He was engaged in the performance of this duty at the time of the accident. It does not appear from the finding of fact nor from the evidence as far as the same is quoted in the opinion of Commissioner Handy that Marshall intended to use the car to take his wife to the theatre, but even if he had intended to use the car for this purpose the appropriation of the car for his own private ends would not have begun until he actually started for the theatre. It is very clear to us that so long as Marshall was proceeding to his home with the car, under the circumstances of this case, that he was performing a service for his employer in the regular course of his employment.

Counsel for appellant rely upon *Kent* v. *Va.-Carolina Chem. Co.*, 143 Va. 62, 66, 129 S. E. 330, to support their contention that Marshall was not entitled to compensation, because, while he was on his way home with the purpose in view of shortly thereafter using the

car to take his wife to the theatre, he was not, for this reason, performing any service for his company and the accident therefore did not arise out of and in the course of the employment. That case is not applicable here. In that case we stated the general rule to be: "That an employee going to or from the place where his work is to be performed is not engaged in performing any services growing out of or incidental to his employment." We then stated that there were three exceptions to this general rule:

"First: Where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.

"Second: Where the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer.

"Third: Where the employee on his way to or from work is still charged with some duty or task in connection with his employment."

In the *Kent Case* the employee had left the plant where he was engaged in his work and was on his way home. His employer did not provide transportation as a part of his contract; the way he used was not the sole and exclusive way of ingress and egress and he was charged with no duty in connection with his employment after he left the plant. In the instant case under the finding of fact the employee was on his way home in a conveyance provided by the employer and he was still charged with the performance of his duties as such employee. He had not at the time of the accident, which resulted in his death, embarked upon any enterprise of his own. Under such circumstances we repeat the *Kent Case* has no application.

The case of ·*Wertz* v. *Reynolds*, 77 Ind. App. 234,

133 N. E. 393, is referred to as very similar to the instant case. In that case the opinion of the court said that the evidence showed: "Sometime during the day he (the deceased employee) stated that he wanted to take the automobile (belonging to employer) home with him that evening so as to bring his wife into town that night. Appellees gave him permission to take the automobile for that purpose. It is not known whether he was going home, or to the garage or to either when he was killed."

It is clear that in the *Wertz Case*, employee borrowed the automobile for his private use and that it was loaned to him for that purpose. In the instant case the automobile was not borrowed for Marshall's private use; there is no question where he was going when he was killed and the automobile was not being used for his private purpose at the time.

Commissioner Handy in concluding his opinion after citing a number of cases, including *Harrell* v. *Kelly and Borum*, 8 O. I. C. 858, and the authorities there referred to, said: "In the present case the testimony, as we see it, goes even further than is generally true in cases of this type. The company evidently regarded Marshall as being on duty both night and day. His duties certainly did not end when he left his office. Indeed, on the very day of his death and a few minutes prior thereto, he had stopped by the motor company upon business which was evidently, at least partly, the business of his employer.

"The mere fact that he and his wife intended to return to the city that night to visit the theatre does not, as we view it, alter the decision of the case. * * * * * The company evidently intended to extend the scope of his employment beyond the time that he was in the office, this being clearly shown by

the evidence as he had to deliver yeast late in the night, and it even went to the extent of paying garage rent at his home for his car."

In this conclusion we concur and we are of opinion, therefore, to affirm the award of the Commission.

*Affirmed.*