LEDRO CONZUELLO, APPELLEE, V. OTTO L. TEAGUE ET AL., APPELLANTS.

FILED JULY 19, 1932. No. 28419.

*Crossman, Munger & Barton* and *Story & Thomas,* for appellants.

*Troyer, Pardee & Felton, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and PAINE, JJ., and BEGLEY and BLACKLEDGE, District Judges.

DEAN, J.

This action was commenced by Ledro Conzuello, pursuant to the provisions of the workmen's compensation act, against the defendants Otto L. Teague and Lewis L. Bowen, who are engaged in business under the firm name of Atlas Beverage Company, to recover compensation for injuries alleged to have been sustained by him in the course of his employment by the defendants as a janitor and truck driver. The injuries complained of were sustained on or about February 15, 1931, when the truck the plaintiff was driving collided with an automobile at the intersection of Eighteenth and Webster streets in Omaha while the plaintiff was returning the truck to the garage after having made a delivery of a product of his employers.

Upon appeal to the district court the order of the compensation commissioner was affirmed and the court thereupon decreed that the plaintiff recover $10 a week for 112½ weeks for 50 per cent. total permanent disability of the use of his right arm; $10 a week for five weeks

for temporary total disability; medical expenses; and $150 for attorney's fees. From the judgment so rendered the defendants have appealed, and the plaintiff has filed a cross-appeal.

The defendants' argument is that the plaintiff's injuries were not sustained in the course of his employment, but were sustained while he was driving the truck for his own convenience and pleasure. The record discloses that on February 14 the plaintiff had made certain deliveries during the day and that, about midnight, the truck was returned to the garage by the defendant and another employee. From thence a garage employee drove the plaintiff in the truck to the home of a man named Peterson, but the truck was returned directly to the garage. The plaintiff testified that at the Peterson home he overheard a man say he was going to the home of Francis Crawford, a policeman, and that this statement reminded him, the plaintiff, that Crawford had requested him to deliver a case of beer that evening. The plaintiff then went to the garage and drove in the truck to the Crawford home. It appears that the truck was not always unloaded when it was stored for the night, but that, for convenience, any remaining cases of beer were left thereon. Upon arrival at the Crawford home, the plaintiff delivered a case of beer and he was invited into the home and remained there with others until about 3 o'clock in the morning. He tesitfied that he then took a direct route to return the truck to the garage, and that it was on the return trip that the truck and an automobile collided and he sustained the injuries of which complaint is made herein.

One of the plaintiff's employers testified that Crawford was a regular customer and that he had credit with the company, but this employer testified that he knew nothing of the order for beer that Crawford left with the plaintiff. But it does appear that the drivers of the trucks carried order books and accepted orders for beer when they were out making deliveries. And it also appears that orders were often delivered in the nighttime, and

that, for convenience, the office of the company remained open until 11 o'clock every night. This witness also testified that, while the plaintiff was not a regular driver, he had on the day in question here taken the place of one of the regular drivers who was discharged, and that on other occasions the plaintiff had made deliveries of special orders.

Crawford, at whose home the beer was delivered, testified he returned an empty beer case to the Atlas Beverage Company on the morning of February 14, and that he saw the plaintiff in a room at the rear of the company's office and requested him to "drop me off another case." No written order was left, however, nor did Crawford see any other employee at the time. Crawford testified that February 14 was his birthday, and that a party was in progress when the plaintiff delivered the beer, and that they were eating and his wife invited the plaintiff to come in. It appears that Crawford did not pay for the beer that night, but he testified that he subsequently paid another of the company's drivers.

From a review of the facts it appears to us that the plaintiff's injuries were incurred in the course of his employment by the defendants and entitled him to compensation within the meaning of the workmen's compensation act. It has been stated that whether an injury is incident to or connected with a particular business, or arises out of the course of employment, "depends upon the peculiar circumstances of each case." *Railway Express Agency v. Lewis,* 156 Va. 800, 76 A. L. R. 350. While it is denied that the employers had any knowledge of the order for beer and the delivery thereof, it is admitted that the drivers of the trucks had authority and did in fact take orders away from the office and while they were making deliveries. And it is not improbable that Crawford, to whom the beer in question was delivered, stepped into a room at the rear of the office, as he testified, and spoke to Conzuello requesting him to deliver the beer that night. The delivery of the beer for his employer was the

important and determining factor causing the plaintiff to make the trip to Crawford's home that night, and the invitation to the plaintiff to partake of their hospitality was merely incident thereto. And the plaintiff was on his way to store the truck when the collision occurred and he was therefore still charged with a task incident to his employment. See *Fleischmann Co. v. Marshall,* 149 Va. 254; *Meyer v. Royalton Oil Co.,* 167 Minn. 515; *Royal Indemnity Co. v. Hogan,* 4 S. W. (2d) (Tex. Civ. App.) 93. We decline to disturb the finding made by the compensation commissioner and the trial court in the present case.

The defendants attempted to introduce evidence to show that the plaintiff was incarcerated in jail part of the time following the accident and during the period for which he seeks compensation, but objections to the admission thereof were properly sustained by the court. In view of the fact that the plaintiff's disability remains whether he was confined in jail or in a hospital, we can find no error in the court's ruling.

In respect of the injuries incurred by the plaintiff, it disclosed that his right collar bone became loosened and the movement of his arm is since restricted. There is evidence that the plaintiff, in his present condition, has a 75 per cent. total disability of the use of his right arm, and one physician testified that the plaintiff could not lift any considerable weight above his head. But there is also evidence that an operation could be performed to bring the outer end of the clavicle in the plaintiff's arm to its normal position, there to be held in place until it had united with the shoulder blade. The normal expectant disability following such an operation would be about two months, the success thereof depending largely on the knitting of the bones. According to two physicians, the operation would reduce the disability from 25 per cent. to 50 per cent. In view of the evidence of the plaintiff's physician, the basis of the salary received by the plaintiff at the time of the accident, and the fact that the petition contains a plea for the allowance of compensation for

33 1/3 per cent. permanent partial disability of the use of his right arm, merit does not appear in the cross-appeal filed by the plaintiff for an increase from 50 per cent. to 75 per cent. total disability. The judgment is affirmed, with an allowance of $100 as attorney's fees for services in this court.

AFFIRMED.

BLACKLEDGE, District Judge, dissents.