LOUISE APPLEBY, APPELLEE, V. GREAT WESTERN SUGAR COMPANY, INC., ET AL., APPELLANTS.

125 N. W. 2d 103

Filed December 13, 1963. No. 35559.

Wright, Simmons & Hancock, for appellants.

Holtorf, Hansen & Fitzke and Alfred J. Kortum, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is a proceeding under the Workmen's Compensation Act brought by Louise Appleby, the plaintiff, against the Great Western Sugar Company, Inc., and the London Guarantee & Accident Co., Ltd., the defendants.

Robert L. Appleby died on November 19, 1961, as the result of injuries he sustained on that day when he fell from a conveyor at the Scottsbluff, Nebraska, plant of the Great Western Sugar Company, Inc. He was survived by the plaintiff, his widow, and Robert William Appleby, a minor son.

After the hearing before a single judge of the compensation court, at which the plaintiff recovered an award, both the plaintiff and the defendants filed applications for a rehearing before the compensation court. The compensation court sitting en banc found that Robert L. Appleby died as the result of an accident that arose out of and in the course of his employment by the Great Western Sugar Company, Inc.; that the defendants should pay $37 per week for 325 weeks from November 19, 1961, to the legal guardian of Robert William Appleby; and that the defendants should pay the ambulance expense and a part of the burial expense of the deceased. The compensation court entered an award to that effect. The defendants appealed to the district court for Scotts Bluff County which affirmed the award of the compen-

sation court. The defendants' motion for new trial was overruled and they have appealed to this court.

The defendants assign as error the finding that the accident arose out of and in the course of the employment of the deceased. This is the only issue between the parties in this court.

Robert L. Appleby was first employed by the sugar company several days before his death. On the day of the accident he was assigned to work in the warehouse. His job was to relay packages or bales containing six 10-pound sacks of sugar by removing them from the main conveyor and placing them on another conveyor. The second conveyor then moved the packages out of the warehouse and into a railroad boxcar where another employee, Ralph Hayes, handled them.

The main conveyor also carried packages containing twelve 5-pound sacks of sugar and 100-pound sacks of sugar. Another employee removed the packages containing the 5-pound sacks of sugar from the main conveyor and placed them on a conveyor known as a "stacker" which elevated them so that they could be placed in stacks about 45 feet high. At the time the accident happened William Florez was working on top of a stack being made out of the packages containing 5-pound sacks of sugar.

The accident happened on a very cold day. The temperature outside the warehouse was zero or below. Although the warehouse was heated, it was very cold on the floor because the doors were open to permit the loading of railroad cars. It was much warmer near the roof of the warehouse and a man working on a stack of packages would be able to work with his coat off. Approximately an hour and a half before the accident happened Hayes and Appleby went up on top of the stack where Florez was working to warm themselves. Hayes testified that the only way they could get up on the stack was on the conveyor.

Appleby was working under the supervision of Robert

L. Arends, a relief foreman of the warehouse. Arends testified that he assigned Appleby to relaying the packages containing 10-pound sacks of sugar and that he had not given Appleby any instructions about riding on a conveyor belt because his job did not pertain to being on the stacker at all. There is no evidence that Appleby was warned or cautioned by anyone in authority about riding on a conveyor belt. Arends testified that the company had a regulation that employees were not to walk up the stacker while it was running. However, Arends admitted that it was common knowledge that many employees went up on the stacker while it was moving. Arends also testified that when the employees were using a conveyor which was equipped with a belt without cleats, they would wait until there was a sack of sugar on the belt and then ride it up.

Florez is the only person who saw Appleby fall from the conveyor. Florez testified that he was working near the center of the stack; that the stack was then about 40 feet high; that he heard someone call his name; that he looked around and saw Appleby standing up on the conveyor; that when he turned around he saw Appleby fall; that he turned off the conveyor; and that he then crawled down the conveyor to the floor.

Florez also testified that he had mentioned to Appleby that he should not go up on the stacker when it was running; that this was after Appleby and Hayes had crawled up the stacker and had been on top of the stack where Florez was working; that it was common knowledge that many of the employees rode on the stacker while it was running; and that it was easier to go up on the stacker when it was running.

In order to recover under the Workmen's Compensation Act, the plaintiff must prove that the death or disability of the workman was the result of an accident arising out of and in the course of the employment. Cochran v. Bellevue Bridge Commission, 174 Neb. 761, 119 N. W. 2d 292. The words "arising out of" and "in

the course of" the employment are used conjunctively in the statute and both conditions must be established to satisfy the requirements of the compensation act. The accident must occur not only in the course of the employment but the causative danger must also arise out of it. The words "arising out of" refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place, and circumstances of the accident. Hammond v. Doctor's Hospital, 145 Neb. 446, 17 N. W. 2d 9.

It is clear that the accident in this case happened in the course of the employment of Appleby by the sugar company. The more serious question is whether the accident arose out of the employment.

The defendants argue that the accident did not arise out of the employment because Appleby's duties did not require that he be on the stacker or on the stack of packages where Florez was working; that Appleby was not at his duty station when he was injured; that he had not been instructed to leave his duty station; and that Appleby's conduct amounted to a disobedience of orders. This argument assumes that an employee cannot recover compensation unless he is injured while he is actually performing the precise task to which he has been assigned. The Workmen's Compensation Act is not that restrictive.

The term arising out of the employment in the Workmen's Compensation Act covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his work, are regarded as being within the scope or sphere of the employment. Hopper v. Koenigstein, 135 Neb. 837, 284 N. W. 346.

In the Hopper case this court quoted with approval

from 1 Honnold, Workmen's Compensation, p. 381, as follows: " 'Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade.' "

In the Hopper case this court cited Moise v. Fruit Dispatch Co., 135 Neb. 684, 283 N. W. 495, as an illustration of the principle referred to. In the Moise case the plaintiff was allowed to recover compensation for the death of an employee who was killed in an explosion caused by his lighting a pipe in a room that had been filled with gas for the purpose of ripening fruit.

We think the evidence in this case supports an inference that Appleby was on the conveyor or stacker for a purpose that was reasonably necessary or incident to the performance of the work. We conclude that the accident arose out of his employment.

The judgment of the district court is affirmed. The plaintiff is allowed the sum of $500 for the services of her attorneys in this court to be taxed as costs as provided in section 48-125, R. R. S. 1943.

AFFIRMED.