JERRY TODD, APPELLEE, v. MER-DEL ENTERPRISES, INC., A CORPORATION, APPELLANT.

166 N. W. 2d 598

Filed April 4, 1969. No. 37103.

Kier, Cobb, Luedtke, Swartz & Wieland, for appellant.

Curtis & Curtis, for appellee..

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a workmen's compensation case. The Workmen's Compensation Court dismissed the plaintiff's petition because of failure to establish causal connection between the accident and the ultimate injury. Plaintiff appealed to the district court. That court awarded workmen's compensation benefits, and the defendant has appealed.

The plaintiff, Jerry Todd, was 45 years old and had been a diabetic for approximately 15 years on September 22, 1965. On that date, he was installing a propane tank. While he was pumping liquid propane from a tank, a small amount of it spewed on the upper part of his body, and he suffered propane burns to the right chest and left elbow. He continued working, but consulted his physician the following day and again on September 25, 1965. At that time, the doctor applied a dry dressing to the burn on his chest. There was a large blister on the right side of his chest, which the plaintiff described as two blisters, 2 to 2½ inches long by 2 inches wide. There was a red area on the left elbow, but no blister. Plaintiff continued to work regularly through October 1, 1965.

On the evening of October 1, 1965, the plaintiff discovered lesions on his feet. No propane had gotten on his feet, nor on any part of his body below the waist. He returned to the doctor on October 2, 1965. The doctor found that the burn on his chest was healing well, but prescribed medication for his feet. The doctor's examination on October 2, 1965, noted a vascular disturbance in the form of a diminished peripheral pulse in plaintiff's foot and plaintiff also complained of losing sensation in his feet. The chest burn healed in 10 days to 2 weeks, but remained discolored for some months.

There was no further treatment for the chest burn after September 25, 1965.

Plaintiff was placed in the hospital on October 3, 1965. He was transferred to a hospital in Denver for further evaluation on October 11, 1965, and returned to the Community Hospital in Imperial on October 19, 1965, where he remained until October 30, 1965, when he was discharged. During the hospitalization, the condition of his feet and his diabetes and its complications were the objects of treatment. He was treated with drugs for dilating the blood vessels and improving the circulation in his feet. Lesions and ulcers on his feet were treated and dead tissue removed from time to time. He was treated by his physicians in Denver and in Imperial after his discharge from the hospitals, with some improvement in the toes until March 9, 1966, when he was released to return to work. At this time he still had an ulcer on the right big toe. Defendant paid compensation and medical expense for this period. Plaintiff returned to work March 10, 1966, and worked until June 3, 1966. At that time he again returned to the doctor and at this time there was an abscess on the right big toe. He did not again return to work.

On November 12, 1966, the plaintiff returned to one of his doctors in Denver and was admitted to the hospital with gangrene in the right foot. He remained there until December 19, 1966. Some bones were removed from his right big toe. He had osteomyelitis, as well as gangrene, in that toe. Sometime later, the toe was completely removed and at the time of trial, his feet were healed up and he had had no further difficulty.

The plaintiff had been treated for lesions on his feet on two occasions before September 1965. In late July 1964, the plaintiff cut his foot, developed an abscess, and had a piece of glass removed from his foot. He was treated until August 14, 1964. On April 21, 1965, the plaintiff had a puncture wound of the left foot from a large tack. He was admitted to the hospital on April

24, 1965, and remained there until May 21, 1965. On at least one of these occasions, he lost all the skin on one toe. The physician who treated him on both occasions testified that the treatment was made much longer by reason of the complications of diabetes, and that the delayed healing was because of the preexisting impairment in his blood vessels.

It is the plaintiff's contention that the propane burn on his chest in September 1965, threw his diabetes out of control; further interfered with the peripheral blood supply in his feet; and combined with his diabetes to produce the gangrene and osteomyelitis, which ultimately caused the removal of his toe. Plaintiff contends that the evidence establishes a direct cause and effect relationship between the propane chest burn and the loss of his toe.

The issue involved is one of medical causation. All of the doctors agree that the correct diagnosis of plaintiff's "injury" to his feet was diabetes mellitus, with diabetic gangrene. All of the doctors agree that a diabetic is prone to infection, particularly in the extremities where the disease commonly causes a restriction in the blood supply.

The area of medical disagreement here is with respect to the possible causal relationship between the propane chest burn which the plaintiff received in the course of his employment, and the ultimate "injury" to his feet, for which his action is brought. The doctors seem to agree that the possible causal relationship depends upon whether the burn on the chest was sufficient to restrict the circulation of the blood in the feet, either by reason of traumatic shock or by throwing his diabetes badly out of control.

On these issues, the physician who treated the plaintiff at the time of his propane burn and thereafter never found any evidence that the plaintiff went into traumatic shock as a result of the burn. The only evidence that the burn might have adversely affected the controlled

condition of plaintiff's diabetes in any way was plaintiff's testimony as to the number of units of insulin he was taking immediately before the burn and the number of units he was taking in the hospital some 12 days thereafter. This evidence is outweighed by the history of insulin dosage from medical and hospital records both before and after the accident and propane burn. No doctor testified that plaintiff's diabetes was badly out of control at any time.

Only one doctor testified that, in his opinion, there was a direct cause and effect relationship between the propane burn on plaintiff's chest and the condition of his right foot. His opinion was primarily based upon a history given him by the plaintiff which conflicted with other established medical evidence. One doctor testified that there was a possibility of such a connection here. Several other physicians found no medical causal relationship or testified that the plaintiff's difficulties with his feet and the loss of his toe were entirely due to the diabetes and its complications.

In a workmen's compensation case, the plaintiff has the burden of establishing by a preponderance of the evidence that the accident in his employment in reasonable probability contributed in some material and substantial degree to cause the injury. Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461.

The Workmen's Compensation Court was correct in finding that the plaintiff failed to maintain the burden of proving a causal connection between the burn on his chest on September 22, 1965, and the condition of his feet for which compensation is sought.

For the reasons stated, the judgment of the district court is reversed and the cause remanded with directions to dismiss plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.