BETTY SATTERFIELD, APPELLANT, V. ED NAGEL, DOING
BUSINESS AS FAIRACRES REST HOME ET AL., APPELLEES.

183 N. W. 2d 237

Filed January 22, 1971. No. 37712.

Atkins, Ferguson & Nichols, LeRoy M. Hahn, and Hugh
S. Atkins, for appellant.

Holtorf, Hansen, Kortum & Kovarik and David C.
Nettleman, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,
SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This is a proceeding under the Workmen's Compensa-
tion Act. The plaintiff, Betty Satterfield, claims that
she was injured while employed by the defendant Ed
Nagel, as a nurse's aide at the Fairacres Rest Home in
Scottsbluff, Nebraska.

After a hearing before one judge of the compensa-
tion court, the court found that the evidence did not
show that the plaintiff's disability was the result of an
accident arising out of and in the course of her employ-
ment, but was the result of a natural progression of a
preexisting condition. Both parties filed applications
for a rehearing before the full compensation court.

After a hearing before the full compensation court,
the court again found that the evidence did not show

that the plaintiff's disability was the result of an accident arising out of and in the course of her employment, but was the natural progression of a preeexisting condition, and affirmed the previous order of dismissal. The plaintiff then appealed to the district court.

The district court found that the evidence did not show that the plaintiff's disability was the result of an accident arising out of and in the course of her employment, but was the result of a natural progression of a preexisting condition, and dismissed the action. The plaintiff has now appealed to this court.

The burden was upon the plaintiff to prove by a preponderance of the evidence that her disability was caused by an accident arising out of and in the course of her employment by the defendant. Todd v. Mer-Del Enterprises, Inc., 184 Neb. 258, 166 N. W. 2d 598. The principal issue in this case is whether the plaintiff's disability is a result of the following incident.

On or about April 24, 1968, the plaintiff was assisting several other persons move a patient at the rest home from a regular bed into a hospital bed. A draw sheet was being used to move the patient. The plaintiff was holding one side and another nurse was holding the opposite side. As the patient was being moved. onto the hospital bed, the nurse opposite the plaintiff dropped her side of the draw sheet and the plaintiff fell forward onto the patient. The plaintiff testified that as she fell, "I felt my back snap."

The plaintiff further testified that at the time it happened she said that she had "snapped" her back. The nurse who was helping the plaintiff with the draw sheet testified that she could not recall the plaintiff complaining about her back. The daughter of defendant's wife, who was in charge of the rest home that day, was helping move the patient. She testified that the plaintiff said nothing about her back.

The plaintiff finished her work that day, which was a Wednesday. On Thursday, the plaintiff consulted Dr.

Hanna about her back. She did not work again until the following Monday which was her next regular work-day. She worked on Monday and saw Dr. Holmes about her back that day. She also worked Tuesday and Wednesday. On Saturday she tried to rake some leaves in her yard. This seemed to aggravate her back situation and she was hospitalized the next day, She has not worked since that time.

The plaintiff has a long medical history and has had surgery for various conditions 14 times. Her history of back trouble extends back to before January 1966.

The record shows that the plaintiff was hospitalized for 24 days in January 1966 for low back pain. She was treated with traction and a lumbosacral garment for what was considered a recurrent low back syndrome. The hospitol report at that time states that: "* * * she has had recurrent back trouble over the past several years. She has been treated by a orthopedic surgeon for this in the past and was evaluated and told that it was felt that surgery was not indicated at the present time. She was fitted with a back brace and treated conservatively and apparently got along quite well until while moving she lost her back brace and has been without it now for several weeks. She states that during this time her back has become progressively worse."

A consultation report at that time states the plaintiff related: "* * * she has had backache for good many years. In about 1948, she was involved in an automobile accident when she was a passenger in an automobile, and she was treated on an out patient basis for low back syndrome. Periodically, she has had aching in her back. She did quite well until 1958 or 1959 when she was working for Armours Meat Packing Company, and was moving tubs of meat or sliding it, and one time she pulled on this 150# tub and noted pain in her back. Subsequently, she has had increased difficulty with her back. She was treated for acute back with a corset."

On April 2, 1968, more than 3 weeks before the inci-

dent at the rest home, the plaintiff consulted Dr. Holmes for "low back pain that she had had for several years." She saw Dr. Holmes again on April 9, 16, and 23, 1968. Thus, the plaintiff had been under treatment for her back condition before she saw Dr. Hanna on April 25, 1968, the day following the incident at the rest home.

After the leaf-raking incident on May 4, 1968, the plaintiff was hospitalized from May 5 to June 2, 1968. On June 7, 1968, Dr. Holmes prescribed additional physiotherapy care. She was hospitalized again on August 20, 1968, for the same complaint, following a 2-week car trip. She consulted Dr. Freelander, a neurologist, on August 28, 1968. She was hospitalized in Scottsbluff from September 1 to September 17, 1968, and then in Omaha for an additional 2 weeks. She was hospitalized again for 13 days in November 1968.

She was hospitalized in May 1969 for 2 weeks and developed a "paralysis" of her right arm in November 1969. She saw Dr. Holmes on October 14 and 29, 1969. She was examined by Dr. Freed, a neuro-surgeon, in Denver on May 21 and December 4, 1969, and by Dr. Herrold, a psychiatrist, in Cheyenne in July and October 1969.

The plaintiff made no claim for compensation until October 1968 after she had learned that her medical and hospital expense would not be paid by Blue Cross. Her explanation for the delay is that she did not want to harm or prejudice the defendant in any way. Her medical and hospital expense since April 24, 1968, is now in excess of $5,000.

None of the physicians who have examined the plaintiff have been able to find a logical medical explanation for her difficulties. It has been suspected that a disc injury was the cause of her complaints but the X-rays, neurological tests, and other diagnostic procedures have not demonstrated this to be true. The plaintiff now contends that the incident at the rest home on April 24, 1968, aggravated a preexisting condition causing

hysteria neurosis and disability. This is based upon an opinion by Dr. Herrold that the plaintiff is suffering from a hysteria neurosis, conversion type.

The problem in this case is that there is no satisfactory evidence to establish that the incident at the rest home on April 24, 1968, is the cause of her disability. The opinion of Dr. Herrold is based largely on the history given by the plaintiff.

The fact that the plaintiff was suffering from back pain before 1966; that she had consulted Dr. Holmes for her back condition more than 3 weeks before the incident at the rest home; that she worked the rest of the day on April 24, 1968, and worked her full time the following week; and that she was not hospitalized until after the leaf-raking incident on the following Saturday all suggest that her disability was not caused by the incident at the rest home on April 24, 1968.

As we view the record, it fails to show by a preponderance of the evidence that the plaintiff is disabled as the result of an accident arising out of and in the course of her employment by the defendant. Where the claimant fails to show with reasonable certainty that the disability of which he complains arose out of and in the course of his employment the proceeding will be dismissed. Hart v. American Community Stores Corp., 138 Neb. 149, 292 N. W. 387.

The judgment of the district court is affirmed.

AFFIRMED.