MARY D. REIS, APPELLEE, v. DOUGLAS COUNTY HOSPITAL, APPELLANT.

227 N. W. 2d 879

Filed April 17, 1975. No. 39624.

Donald L. Knowles and William T. Ginsburg, for appellant.

Patrick L. Cooney of McCormack, Cooney & Mooney, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Plaintiff, Mary D. Reis, sued to recover benefits under the Workmen's Compensation Act. In her petition filed in the Workmen's Compensation Court on September 6, 1973, she alleged that she was employed by the Douglas County Hospital as a registered nurse, earning $255 per week, and that on or about January 24, 1973, and while so employed, she suffered a myocardial infarction as a result of an accident arising out of and in the course of her employment, for which she claimed compensation. Defendant admitted her employment as a nurse in the hospital, but denied that the alleged accident and injury arose out of and in the course of her employment. A hearing was had before the Workmen's Compensation Court on October 9, 1973, and on November 14, 1973, the judge who heard the case issued an order of dismissal, finding the plaintiff had failed to maintain her burden of proof that she sustained an accident and received an injury which arose out of and in the course of her employment. Plaintiff petitioned for a rehearing of that decision to the Workmen's Compensation Court sitting en banc, as provided by law; and a rehearing was held on December 11, 1973, before a three judge panel of that court, which found that plaintiff had suffered a myocardial infarction as the result of an accident arising out of and in the course of her employment, and awarded her benefits of $62 per week for 28 2/7 weeks, as temporary total disability covering two separate periods of time. The court also awarded her medical and hospital

expenses, and set aside the original order of dismissal entered by the single judge on November 14, 1973. Defendant Douglas County Hospital appealed that decision to the District Court for Douglas County, which upheld the decision of the Workmen's Compensation Court en banc, and in addition awarded plaintiff's attorney $1,250 as an attorney's fee. Defendant has appealed to this court from the judgment of the District Court. We reverse and dismiss.

Defendant hospital assigns as error that the plaintiff did not meet her burden of establishing and proving by the evidence: (1) Any "accident or occupational disease" that was recoverable under the Nebraska Workmen's Compensation Act, section 48-101, R. R. S. 1943; (2) any "accident or occupational disease" arising "out of and in the course of" her employment which contributed substantially to her heart disease; and (3) that, as a matter of fact, her employment contributed causally to her heart disease. Defendant also alleges that an allowance of $1,250 for attorney's fees was excessive.

The only witnesses who testified in this proceeding were the plaintiff, Mary D. Reis, and her physician, Dr. Edward J. Smith. The defendant produced no witnesses and adduced no evidence, although we feel it would have been a great assistance to the court in this case had defendant done so. However, there is evidence in the record establishing the following facts, or, from which the trier of facts would be justified in finding such facts and conclusions to be established: Plaintiff, Mary D. Reis, is a registered nurse and has been employed by the Douglas County Hospital since October of 1964 in various nursing capacities. In April of 1971 she became staffing coordinator for the hospital. In that position she became responsible for the personnel at the hospital, consisting of about 620 people. Her duties included interviewing and hiring personnel and she had the responsibility to make sure the hospital had nursing coverage 24 hours a day. This required the preparation

of numerous schedules a considerable period of time in advance of the actual service. She sometimes faced hostilities from the employees who objected to her scheduling on weekends, nights, etc., for various reasons, and there is evidence in the record that she was faced with some racial hostility because of her duty assignments. Sometimes she was frustrated by her lack of authority to back up her own decisions, and there was also pressure because of deadlines. She testified that she worked from 50 to 70 hours per week, although she was supposed to work only 40 hours per week. There is evidence that on occasions she took work home from the hospital, and frequently was called at home from the hospital.

In the fall of 1972 she noticed that she was becoming kind of agitated, nervous, and having problems sleeping, "especially if I had taken a lot of work home with me and worked late." In October of 1972 she saw Dr. Smith for her annual physical examination and he prescribed a mild tranquilizer for her, to be taken on "bad days." She next saw Dr. Smith on January 24, 1973. She had been having some pains in her chest and also had developed a cough. Dr. Smith gave her two prescriptions, one for an antibotic, and one for cough medication. He suggested that she should get some rest at home and told her not to go back to work until she felt better. She returned to work on February 5, 1973. Although she felt better, she was still having some chest pains. Within 10 days thereafter, the pain from her chest radiated to her left shoulder and left arm. She called Dr. Smith about her condition on February 16th and he admitted her to Doctor's Hospital on that day. Dr. Smith ordered an electrocardiogram and lab work; and after the results of the tests were obtained, he treated her for myocardial infarction and prescribed bed rest and medication. She was released from the hospital on February 26th, but returned to her home to rest and recuperate, and did not return to work until August

21, 1973. When she returned to work on August 21st, she was employed on an entirely different job, that of physican and patient representative; and only worked 24 hours a week at the beginning, which was later increased to 32 hours a week. She testified that she was married, had two children, a son 20 years of age and a daughter 18 years of age. Her son was in the army, stationed in Thailand, but at the time of the alleged infarction, was stationed at Fort Leonard Wood, Missouri. Her daughter was a freshman at college; and her husband, after an army career, was a butcher at Baker's Super Market, with considerable job security because of seniority. On cross-examination, plaintiff also testified that around January of 1973, she had chest pains for several weeks and that a cough developed. Close to February she started having pains in her shoulder, arms, and neck. She also had an unusual amount of tiredness, weakness, and shortage of breath, and a choking sensation at times. She also had a pain in her jaw.

Plaintiff's doctor and treating physician, Dr. Edward J. Smith, testified on plaintiff's behalf. Dr. Smith is a graduate of the Nebraska Medical School and had practiced in Omaha for over 20 years, when he became a medical consultant for the Nebraska State Welfare Department. We note, in passing, that although in its brief defendant objects to the testimony of Dr. Smith on the ground that he is not a heart specialist, we believe his qualifications are such as to entitle him to testify as an expert witness, with his credibility and the weight to be given to his testimony being a matter for the consideration of the trier of facts.

Dr. Smith testified that he had known the plaintiff for about 5 years and that she came to his office in January of 1973. He took a history from her at that time and she told him that, other than childbearing, she had had no real illnesses of import. At that time her complaints were of chest pain and shortness of breath.

His diagnosis at that time was an upper respiratory infection with viral pneumonia associated with it. He had previously started her on an antibiotic and something for a cough before seeing her. Although he suggested she go to the hospital, she preferred to go to her home for rest and continued medication. His next contact with plaintiff was the evening she entered Doctor's Hospital, at which time he gave her something for cough and pain and ordered a series of laboratory and X-ray procedures, including also an electrocardiogram. He stated that the electrocardiogram showed changes consistent with a myocardial infarction, which he defined in layman's language as a tiny area of death of tissue in part of the heart muscle caused by a cessation of blood flow to it, even on a temporary basis. This slowing down might be caused by a constriction or an occlusion, such as a thrombosis, or also by cholesterol building up deposits on the inside of the blood vessels. A temporary occlusion may be caused by stress or strain, cigarettes, high blood pressure, obesity, etc. As soon as he determined from the electrocardiogram that Mrs. Reis had evidence of an infarction, he started her on vasodilator drugs, to which she responded, but continued to have some chest pain over the next 5 to 10 days. He then sent her home with instructions to get as much rest as she could and to continue with the vasodilator. He saw her during the intervening period until she returned to work in August and also saw the results of an EKG which was taken in September of 1973 at the Douglas County Hospital. He testified that the electrocardiogram showed evidence of an old myocardial infarction, but did not testify as to how old it might have been. Dr. Smith testified that in his opinion the stress and strain of Mrs. Reis' employment was the direct cause of her myocardial infarction.

The following statutes are involved in this case. Section 48-101, R. R. S. 1943, provides as follows. "When personal injury is caused to an employee by accident or

occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury." Section 48-151, R. R. S. 1943, provides in part: "Throughout this act, the following words and phrases as used therein shall be considered to have the following meaning, respectively, unless the context shall clearly indicate a different meaning in the construction used: · * * * (2) The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment. * * * (4) The terms injury and personal injuries shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms shall include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in said employment. The terms shall include an aggravation of preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms shall not be construed to include disability or death due to natural causes but occurring while the employee is at work, nor to mean an injury, disability or death that is the result of a natural progression of any preexisting condition."

In Simon v. Standard Oil Co., 150 Neb. 799, 36 N. W. 2d 102 (1949), this court stated: "An injury to be the

basis of a cause of action within the provisions of the Workmen's Compensation Act must be one caused by an accident arising out of and in the course of the employment. In many instances an injury which occurs in the course of the employment is also one which arises out of it. This is not always true. The compensation law does not make the employer an insurer against all injuries suffered by his employees in the course of their employment, but it does limit recovery of disability benefits to injuries received both in the course of and out of the employment. The phrases 'in the course of' and 'arising out of' are not synonymous, and where they are used conjunctively, as they are in the compensation law of this state, a double condition is imposed and both must exist to bring a case within the act. § 48-109, R. S. 1943; Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788; Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N. W. 739, 46 A. L. R. 1213; 58 Am. Jur., Workmen's Compensation, § 210, p. 717. The right of recovery is statutory, and unless the case has been brought within the conditions imposed by the statute, it must fail. Whether an accident arises out of and in the course of employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved. Hopper v. Koenigstein, 135 Neb. 837, 284 N. W. 346; Conzuello v. Teague, 123 Neb. 574, 243 N. W. 779; 58 Am. Jur., supra." As stated in the above-cited opinion, the right of recovery is statutory, and unless the case has been brought within the conditions *imposed by the statute,* it must fail. Not every heart attack is compensable under our Workmen's Compensation Act. Compensation has been granted in some cases and denied in others. Strict fulfillment of the requirements of the statute is necessary. The combination of employment and a heart attack is insufficient in itself to entitle one to workmen's compensation benefits.

Assuming arguendo, under the facts of this case, the

myocardial infarction sustained by the plaintiff consti-
tuted an "accident," as defined in the Workmen's Com-
pensation Act, and also that the accident "arose out of
her employment," it is necessary, under the terms of the
above statute, that plaintiff also establish by a prepon-
derance of the evidence that the accident arose "in
the course of her employment." In Appleby v. Great
Western Sugar Co., Inc., 176 Neb. 102, 125 N. W. 2d 103
(1963), we stated that the words "arising out of" and
"in the course of" the employment are used conjunctively
in the statute and both conditions must be established
to satisfy the requirement of the Workmen's Compensa-
tion Act. The accident must occur not only in the
course of the employment, but the causative danger must
also arise out of it. In that case this court also stated
that the words "arising out of" referred to the origin or
cause of the accident and are descriptive of its character,
while the words "in the course of" refer to the time,
place, and circumstances of the accident. As stated in
32 Journal of the American Trial Lawyers Assn., 440:
"The heart attack may be attributable to work-con-
nected exertion, stress-and-strain and hence be deemed
to have arisen out of the employment. * * * Under the
'in course of' requirement, we are not concerned with
whether the risk that ensued was work-connected;
rather it must be demonstrated that there was a temp-
oral and space nexus to the employment." See, also,
Johnson v. Hahn Bros. Constr., Inc., 188 Neb. 252, 196
N. W. 2d 109 (1972). We think in this case the plaintiff
has clearly failed to sustain her burden of proving that
her accident occurred "in the course of her employ-
ment." In prior heart cases decided by this court, the
problem has usually not arisen because under the facts
of each particular case it is clear from the evidence
that the heart attack or myocardial infarction or trau-
matic event occurred on the job and while the employee
was performing services for the employer, usually in-
volving unusual exertion. See, for example, Atkinson

v. Little Audrey's Transfer Co., Inc., 190 Neb. 738, 212 N. W. 2d 350 (1973); Conn v. ITL, Inc., 187 Neb. 112, 187 N. W. 2d 641 (1971); Beck v. State, 184 Neb. 477, 168 N. W. 2d 532 (1969); McCauley v. Harris, 164 Neb. 216, 82 N. W. 2d 30 (1957); Ruderman v. Forman Bros., 157 Neb. 605, 60 N. W. 2d 658 (1953); Pixa v. Grainger Bros. Co., 143 Neb. 922, 12 N. W. 2d 74 (1943); Brown v. City of Omaha, 141 Neb. 587, 4 N. W. 2d 564 (1942); Feeney v. City of Omaha, 140 Neb. 497, 300 N. W. 571 (1941); Schirmer v. Cedar County Farmers Tel. Co., 139 Neb. 182, 296 N. W. 875 (1941). See, also, Brokaw v. Robinson, 183 Neb. 760, 164 N. W. 2d 461. In the instant case there is a dearth of evidence as to where and when the "accident" occurred. Dr. Smith did testify that the plaintiff had suffered her damage when she saw him at his office on January 24, 1973. There is also the evidence of the plaintiff that she suffered additional heart pains and discomfiture while resting at her home after he saw her, but she did not even know she had had a heart attack until approximately 1 month after she first saw Dr. Smith in his office. Nowhere have we been able to find any testimony indicating that plaintiff had suffered any myocardial infarction or chest pains at her place of employment, or while performing services for her employer. This, we believe, is a fatal deficiency. We have held that if an inference favorable to claimant in an action for recovery under the Workmen's Compensation Law may be reached only by speculation or conjecture, an award may not be allowed. Ruderman v. Foreman Bros., *supra*. See, also, Wengler v. Grosshans Lumber Co., 173 Neb. 839, 115 N. W. 2d 415 (1962).

In order to recover on a workmen's compensation claim, the claimant has the burden to establish that the accident which allegedly resulted in her injury, arose "in the course of her employment" as well as "out of her employment." It may be, and has been, argued that a rigid insistence upon the separate satisfaction of the "in course of" requisite could lead to a dismal denial of

relief. See 32 Journal of the American Trial Lawyers Ass'n., 427, 440. This has frequently posed a dilemma for the courts, particularly in cases where the claimant suffers a heart attack sometime after working hours. Notwithstanding this fact, we cannot ignore the clear mandate of the statutes, nor can we by judicial fiat legislate out the requirement that the claimant prove the accident occurred in the course of his or her employment. While the result may on occasions appear to be unjust, we do not believe that this court is the proper forum in which to correct the matter.

In view of what we have stated above, we conclude that there was no reasonable competent evidence before the District Court to support a very material element of plaintiff's claim and therefore the judgment of the District Court must be reversed, and the cause dismissed. Gifford v. Ag Lime, Sand & Gravel Co., 187 Neb. 57, 187 N. W. 2d 285 (1971). Under section 48-125, R. R. S. 1943, the award of an attorney's fee to plaintiff's attorney is not permitted, and, therefore, must be denied.

REVERSED AND DISMISSED.