ADAM CHARLEY ELIKER, APPELLEE, v. D. H. MERRITT &
SONS, A CORPORATION, ET AL., APPELLANTS.
237 N. W. 2d 130

Filed December 31, 1975. No. 40191.

Richard D. Sievers of Märti, Dalton, Bruckner, O'Gara and Keating, for appellants.

Healey, Healey, Brown, Wieland & Burchard, for appellee.

Heard before SPENCER, McCOWN, and NEWTON, JJ., and COLWELL and IRONS, District Judges.

SPENCER, J.

Plaintiff, Adam Charley Eliker, filed this action in the Workmen's Compensation Court to recover benefits for an alleged injury arising out of and in the course of his employment. An order of dismissal was entered by a single judge of that court. On rehearing, the court en banc entered an award for the plaintiff, including a finding of a 12.5 percent permanent partial disability of the body as a whole. On appeal to the District Court for Lancaster County, the award was affirmed. We reverse and dismiss.

The issue involved is whether there was an injury in the course of and arising out of the employment. The issue herein is controlled by our decision in Reis v. Douglas County Hospital (1975), 193 Neb. 542, 227 N. W. 2d 879.

Plaintiff had been employed by the defendant corporation for over 29 years. He entered its employ at the age of 16. For the last 5 or 6 years he had performed the duties of a yard foreman or superintendent. His duties as a yard foreman required him to work long hours, starting daily at 7 a.m., during which time he was physically involved with loading and unloading 100-pound sacks of sand, plaster, and cement from trucks and railroad cars. This work involved bending, stooping, and twisting the body as a matter of course, in picking up and moving the heavy sacks. Mr. Eliker testified that his physical activities away from his job were not nearly so strenuous or demanding as those at work.

On the day in question plaintiff reported to work at

7 a.m., and was feeling fine. As plaintiff describes it, he went to work without any pain or disability and about 9 a.m., he started getting a terrible neckache. It kept getting worse during the day. Plaintiff, in answer to a question as to whether it was confined to his neck, stated: "Gradually just seem like it started in my higher neck and just felt like it just tightened the muscles until it was just sore kind of like all the way down your back. Like my entire back was sore, you see." The testimony continued: "Q- It didn't — it didn't come upon you suddently, did it? I mean it was — A- No, sir. Q- It was very gradual? A- It seemed like a gradual thing, yes, sir. Q- Okay. It didn't come upon you when you did a certain thing; is that also correct? A- I don't recall any certain thing, a definite — as I stated to the man in the hospital, I just couldn't — Q- And then it gradually worsened throughout the day, your neck, until you finally left at 3 in the afternoon, about? A- This is correct."

Plaintiff further testified: "Q- What was it you were doing at the time you noticed the difficulty come on? A- All of the normal work that I usually always do. Q- All right, and just describe specifically at this point what that would be? A- Well, lifting the bags, and all the other — all the other work that there is there to do. Q- All right. A- It's just a situation where you might just go from one thing to another, you see, and lifting bags here, and you might go over and back a truck over to the dock and, you see, this sort of thing. It's — it's a small operation that does a lot of business."

At another point in the record, plaintiff testified on direct examination as to the injury as follows: "A- Well, I came to work and of course I felt fine, and gradually during the morning I started getting a terrible neckache and I — it just kept getting worse and stressing to where it just pulled at the muscles in your back so terrible bad that — you know — you just couldn't hardly bear it. You'd grit your teeth and go on to do-

ing a little more work and each time you'd do a little more, it would just be a little more painful."

The above quotations sum up the testimony of the plaintiff as to the onset of his difficulty. At no place in the record does he pinpoint what he was doing when he first felt a pain in his neck, or what might have brought on the pain. Plaintiff went home about the middle of the afternoon. The next morning he went to the emergency room at St. Elizabeth Community Health Center, and after some tests was admitted to the hospital under the care of Doctor Getscher. He remained in the hospital until January 2, 1974, during which time he received hot pack treatments and was placed in heavy traction.

About 2 weeks after plaintiff's dismissal from the hospital, he went back to work. He worked one complete day and on the second day he passed out on the job and was taken home. On January 16, 1974, he was admitted to the hospital under the care of Doctor Goetowski. There he underwent tests for several days. Finally a myelogram was performed and a disc problem discovered. On January 24, Doctor Goetowski performed a laminectomy and found that Mr. Eliker had a large extruding, herniated disc, with resultant swelling of the nerve root. In response to a hypothetical question, the doctor testified that the herniated disc was related to plaintiff's work activity. On this record, the compensation court en banc found that the plaintiff had sustained an accident arising out of and in the course of his employment with the defendant; ordered the defendant to pay plaintiff's medical bills, together with 8 and 6/7ths weeks of temporary total disability and 291 and 1/7th weeks, at $16.35 per week, for a 12.5 percent permanent partial disability to the body as a whole.

Our law is well settled. The burden of proof is upon the claimant in a workmen's compensation case to establish by a preponderance of the evidence that his disability was caused by an accident arising out of and

in the course of his employment. Satterfield v. Nagel, 186 Neb. 332, 183 N. W. 2d 237 (1971).

The statute clearly requires an accident arising out of and in the course of the employment which causes personal injury. The testimony of the plaintiff does not meet this criteria. "Accident" is defined in section 48-151(2), R. R. S. 1943, as follows: "The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. *The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment.*" (Italics supplied.)

In Brokaw v. Robinson (1969), 183 Neb. 760, 164 N. W. 2d 461, in construing the "by accident" requirement, we said: "The 'by accident' requirement of the Workmen's Compensation Act is now satisfied, either if the cause was of an accidental character, or if the effect was unexpected or unforeseen, and happened suddenly and violently. The problem in cases such as this is now causation, and whether an accidental injury arose out of and in the course of the employment."

In answer to a hypothetical question, Doctor Goetowski said: "A Granting the circumstances you have related, and my personal knowledge of the patient and his general activity, I feel very definitely that the symptoms and the disc that I discovered was of traumatic nature, and could have very well been subjected to long-standing heavy physical trauma, which eventually caused this complete rupture. Q All right. Well, when you say, it could have been, do you feel with reasonable probability that it was? A Indeed. I feel, with

reasonable medical certainty, that it was definitely related to his work activity. Q All right. Do you have an opinion, taking into account the same things, as to whether — as to Mr. Eliker, that injury was of a nature which was of a nature which was unforeseen, unexpected, and accidental? A In my opinion, yes, sir. The incident of a disc extrusion can occur after degeneration has started. It may occur through some trivial response — a sneeze, a cough, a twist, a turn. But the degeneration and the further deterioration of the disc mass has started after some trauma, and persists with long, heavy-duty labor."

On cross-examination, Doctor Goetowski testified as follows: "Q Correct me if I'm wrong. Did you testify that herniated discs, as a rule, are caused by trauma? A Yes, sir. I would say they are of traumatic origin, almost universally. I realize that there are occasional peculiar things that cause a disc to rupture, but trauma is, by far, the most common cause. Q And didn't you testify that a person could sneeze, cough, something of this nature, and cause the start of the herniated disc, and not feel symptoms at that time? A Yes. That is correct. They can certainly do that. Q And isn't it possible, in Mr. Eliker's case, that this could have happened? That he could have sneezed, coughed? A I suppose he could have, although he did not relate any of that to me."

Assuming for the moment that the plaintiff sustained an accident which arose out of his employment, it is necessary under the terms of our statute that the plaintiff also establish by a preponderance of the evidence that the accident arose in the course of his employment. As we said in Reis v. Douglas County Hospital (1975), 193 Neb. 542, 227 N. W. 2d 879: "In Appleby v. Great Western Sugar Co., Inc., 176 Neb. 102, 125 N. W. 2d 103 (1963), we stated that the words 'arising out of' and 'in the course of' the employment are used conjunctively in the statute and both conditions must be established

to satisfy the requirement of the Workmen's Compensation Act. The accident must occur not only in the course of the employment, but the causative danger must also arise out of it. In that case this court also stated that the words 'arising out of' referred to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place, and circumstances of the accident. As stated in 32 Journal of the American Trial Lawyers Assn., 440: 'The heart attack may be attributable to work-connected exertion, stress-and-strain and hence be deemed to have arisen out of the employment. * * * Under the "in course of" requirement, we are not concerned with whether the risk that ensued was work-connected; rather it must be demonstrated that there was a temporal and space nexus to the employment.' "

In Reis, we were concerned with conditions which might bring about a heart attack. Here, plaintiff is stressing the physical activities inherent in his employment.

We are of the opinion that the plaintiff has failed to sustain his burden of proving that his accident arose out of his employment or occurred in the course of his employment. It is true that the plaintiff said that his neck pains came on suddenly while at work. It is also true that he has been working in employment involving a lot of lifting, twisting, and stooping. There is no evidence, however, as to exactly what he might have been doing at the time of the onset of the pain. Plaintiff said he was pursuing his regular duties. Doctor Goetowski's notes contained the following statement: " 'Consider it an accident or not, I don't know.' " Further, Doctor Goetowski noted: " 'Don't have any definite notation of an accident, but he could have had several'?"

To hold for the plaintiff herein would require us by judicial fiat to legislate out the requirement that the claimant prove the accident occurred in the course of

his or her employment. While that result may appear herein to be unjust, we do not believe that this court is the proper forum in which to correct the situation.

In view of what we have stated above, we reach the conclusion that there was no reasonably competent evidence before the District Court to support a very material element of plaintiff's claim. The judgment of the District Court is therefore reversed and the cause is dismissed.

REVERSED AND DISMISSED.

McCOWN, J., dissenting.

Only factual issues are involved here. Both the Workmen's Compensation Court en banc and the District Court, on appeal, determined those factual issues in favor of the claimant, and there is reasonable competent evidence in the record to support those findings of fact. The majority opinion disregards the only medical testimony as to causation which was that the injury was, in fact, caused by the employment, and also fails to give the claimant the benefit of all reasonable inferences and conclusions which may be drawn from the evidence as to the time and place of occurrence of the "injury." The opinion ignores the rule set out by this court in Gifford v. Ag Lime, Sand & Gravel Co., 187 Neb. 57, 187 N. W. 2d 285. "On appeal of a workmen's compensation case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence. * * * Upon appellate review of a workmen's compensation case in the Supreme Court, the cause will be considered de novo only where the findings of fact are not supported by the evidence as disclosed by the record."

In a workmen's compensation case, as well as in many other situations to which the rule applies, a successful claimant is entitled to have the evidence considered in the light most favorable to him and to have the benefit of all reasonable inferences that can be rea-

sonably deduced from the evidence. The claimant here was denied the benefit of that rule, and this court has now reviewed the fact de novo without reference to the factual findings of the Workmen's Compensation Court and the District Court. This case should be affirmed.